NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUMONT BOARD OF EDUCATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.: 09-5048 (JLL)<br>)<br>) **OPINION** |
| J.T. o/b/o I.T., | )<br>) |
| Defendants. | )<br>) |

For Plaintiff: James L. Plosia, Jr. (*Apruzzese, McDermott, Mastro & Murphy, P.C.*)
For Defendants: Rebecca K. Spar (*Cole, Schotz, Meisel, Forman & Leonard, P.A.*)
          Michael R. Yellin (*Cole, Schotz, Meisel, Forman & Leonard, P.A.*)

**LINARES**, District Judge.

This matter comes before the Court by way of the cross-motions [CM/ECF #32 & 34] for summary judgment. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Plaintiff's motion is denied, and Defendants' motion is granted.

## INTRODUCTION

I.T. is an autistic child, born in March 2005, sufficiently disabled so that she qualified for preschool early intervention services as of September 2007. (ALJ Op. at 2, 76; Pl. 56.1 Statement ¶¶ 1-2, 33.) I.T. began receiving in-home instruction under the early intervention services provided in a one-on-one format using the Applied Behavioral Analysis Discrete Trial ("ABA/DTI") methodology. (ALJ Op. at 76.) I.T. resisted ABA/DTI, and Developmental

Individual Relationship-based with Floortime[1] ("DIR/Floortime") intervention was then added to her intervention program.  Shortly thereafter, I.T. began making significant progress.  (Id. at 76-77.)  J.T., I.T.'s mother, received training in how to care for I.T. from the early intervention services instructors, and also educated herself on ABA and DIR.  (Id. at 77.)

I.T. aged out of early intervention services at three years of age, but qualified for preschool services on March 3, 2008.  (Id. at 78.)  Defendant Dumont Board of Education ("Plaintiff" or "Dumont") offered I.T. an education at the Tri-Valley Academy ("Tri-Valley"), a facility that educates autistic children utilizing the ABA/DTI method.  Tri-Valley, however, does not offer DIR/Floortime, and provides interaction between its students and their non-disabled peers only in non-classroom settings.  (Id. at 77.)  I.T.'s parents preferred placing I.T. at The Children's Center at Montclair State University ("The Children's Center"), which utilizes DIR/Floortime.  (Id.)

I.T. accompanied her parents to an intake meeting with Dumont representatives at Tri-Valley on March 7, 2008.  (Id. at 78.)  During the meeting, an agreement was reached that the "sensory diet" used with I.T. at home would be continued in preschool placement, but no agreement was reached regarding the use of Floortime.  (Id. at 78.)  J.T. turned over materials to Tri-Valley representatives related to I.T.'s early intervention services, but no early intervention instructor attended the meeting.  (Id. at 78-79.)  Tri-Valley was the only placement offered to I.T. (Id. at 79.)

On March 25, 2008, members of I.T.'s child study team convened a meeting, which included Ms. Stenerson (Dumont's representative), J.T., a general education teacher present for

---

[1]Floortime is a component of DIR.  (ALJ Op. at 48-49.)

only three minutes, and a special education teacher. (Pl. 56.1 Statement ¶ 89.) A draft IEP was presented at the meeting by Ms. Stenerson, the Dumont employee who wrote the IEP. (Id. at 79.) The child study team participants at the March 25 meeting agreed that I.T. should receive Floortime instruction and "various sensory experiences." (Id.) The draft IEP indicated that I.T. "has behavioral problems, tantrums, screams loudly, bangs her head and does other things that are self injurious." The draft IEP, however, did not mention Floortime, although it did indicate that I.T. had sensory issues. (Id.) The draft IEP also stated that a behavioral plan would have to be developed by a specialist if necessary. (Id.) J.T. indicated on the draft IEP that she requested the use of Floortime, but she and her husband refused to sign the IEP at the March 25, 2008 meeting. (Id. at 80.)

Pertaining to the draft IEP, the Honorable Sandra Ann Robinson, A.L.J., found that Dumont's witness, Dr. Kormann, opined that an IEP for I.T. would require a behavioral plan. (Id.) Additionally, Judge Robinson noted that the final report based on a February 27, 2008 evaluation of I.T. by Dr. Baumgaertel was not available to the child study group members prior to the March 25, 2008 meeting, in which Dr. Baumgaertel recommended "Floortime . . . sensory integration therapy . . . sensory diet and language strategies," but that Dumont had access to Dr. Baumgaertel's recommendation that Floortime continue for I.T. at the March 25 meeting. (Id. at 87.)

J.T. and I.T. visited The Children's Center in June 2008. On July 2, 2008 I.T. was accepted, and placed there. (Id. at 80.) The placement was with fourteen ordinary students and three other special education students. (Id.) The Children's Center prepared a Learning Program individualized for I.T. and evaluated her progress every three months toward the goals laid out

therein. (Id. at 82.)

Judge Robinson found the I.T. made progress in The Children's Center. I.T. had "only seven" tantrums in her first week, and interacted with peers from the first month at The Children's Center. (Id.) I.T. made significant progress by November 2008: she had fewer tantrums, spoke to her mother and to her fellow students, and started to dress and wash herself. (Id. at 83.) By February 2009, I.T. was engaging in group activities, and in May 2009, her use of language again increased and she began to focus her attention and take direction in addition to having an increased ability to interact with others. (Id. at 82-83.) I.T. also stopped having tantrums and delivering head-butts. (Id. at 87.) On the one-through-eight scale used in evaluating I.T.'s progress at The Children's Center, she went from scoring a one or two on each area to scoring between three and six between July 2008 and January 2009. (Id. at 84.)

As indicated in Judge Robinson's opinion below, she found that the use of DIR/Floortime was responsible for I.T.'s improvement in her early intervention treatment. (Id.) She also found that I.T.'s improvement with DIR/Floortime was recognized in the recommendation of Dr. Kulikova that I.T. continue receiving DIR/Floortime. (Id. at 84-85.) Judge Robinson's opinion also notes that Ms. Lloyd, one of Dumont's witnesses, stated that I.T.'s IEP should contain a "strong behavior management component," and the Dumont-proposed IEP for I.T. did not contain such a component. (Id. at 85.) Similarly, the opinion found that Ms. Lloyd noted I.T.'s significant sensory issues, but the IEP proposed by Dumont contained no sensory diet. (Id.) Additionally, Judge Robinson found that I.T.'s history indicated a need for Floortime, but Dumont had not proposed an IEP containing that methodology for I.T. (Id. at 86.) The reason for Floortime's absence from the Dumont draft IEP was that Dr. Dowd, Dumont's director of

-4-

special services, refused to consider it. (Id.)

Judge Robinson found, based upon the testimony of Defendants' autism expert Dr. Havens, that the ABA program at Tri-Valley does not have a strong sensory program and that "no peers were observed" in the ABA program there. (Id. at 87.) Dr. Havens found that I.T. interacted with her peers, used language, and regulated her behavior well while at The Children's Center. (Id.) Dr. Havens also found that I.T. improved when Floortime was used with her. (Id.) The opinion also determined that The Children's Center has a sensory gym, a Floortime expert, and education conducted in the company of non-disabled peers, three things which Tri-Valley does not have. (Id. at 88.)

At the conclusion of sixteen days of testimony from numerous witnesses, Judge Robinson determined that I.T. had made significant progress at The Children's Center in what she considered to be the least restrictive environment. (Id. at 88-89.) Judge Robinson also concluded that Dumont did not provide a free and appropriate public education because the IEP it proposed did not address I.T.'s specific needs, "whether the program was DIR/Floortime or another modified method recommended by the District," because Dumont's IEP did not include a sensory diet, address the documented need of I.T. for Floortime, or provide a behavior plan. (Id. at 89.) Judge Robinson then ordered Dumont to pay for I.T.'s placement at The Children's Center. (Id.) This appeal followed.

## DISCUSSION

### A. Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**B.     The Cross-Motions for Summary Judgment**

Plaintiff Dumont moves for summary judgment on the basis that the underlying opinion of the ALJ inadequately addresses the factual record presented below. (Def. Br. at 27-28.) Plaintiff argues that the ALJ's decision in favor of defendants is not supported by the credible evidence in the record: specifically, Dumont asserts that it is not supported by the credible evidence that Dumont did promise to provide DIR/Floortime instruction, that there was no recommendation in the record for DIR/Floortime instruction, and that Dumont did provide a sensory diet for I.T. Plaintiff further claims that Dumont did provide I.T. with a free and

appropriate education, and that the ALJ simply chose the education methodology preferred by J.T. without giving due weight to the testimony and evidence on the methodology choices available. (Id. at 1, 29, 30-32.) Finally Dumont maintains that even if it did not provide I.T. with a free and appropriate education, no relief is available because I.T.'s present placement is likewise not providing a free and appropriate education. (Id. at 46.) In its opposition and cross-motion, Defendants move for this Court to deny Plaintiff Dumont's motion, find that Dumont in fact denied I.T. a free and appropriate public education, and find that The Children's Center is an appropriate placement for I.T. (Def. Opp. Br. at 5, 32.)

The Third Circuit Court of Appeals has recently restated the standards that this Court is bound to apply in administrative appeals under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The IDEA mandates that states, in order to receive federal financial support, "make available a free and appropriate public education to all children with disabilities residing within their borders." D.S. v. Bayonne Bd. of Educ., —F.3d—, 2010 WL 1610591, slip op. at 4 (3d Cir. 2010). The education provided under the IDEA must be constructed so as to meet a disabled child's unique needs and provide "significant learning," including a meaningful educational benefit in the least restrictive environment. D.S., No. 08-4730, slip op. at 4 (internal quotation omitted). The individualized instruction is provided through an Individualized Education Plan ("IEP"). Id. at 4-5. Should the IEP provided by the state fail to supply the free and appropriate public education the IDEA guarantees, "the state must reimburse the child's parents" for private school costs incurred by the parents if a private school can meet the standard. Id. at 6. The means of challenging a perceived inadequacy in an IEP is through an administrative proceeding, which New Jersey implemented as a "due process hearing"

before an administrative law judge ("ALJ"). Id. The due process hearing may be appealed to a state court or to a federal district court. Id. at 7.

When reviewing an ALJ decision under the IDEA, this Court applies a modified de novo review, giving "due weight and deference" to the administrative findings. Id. at 21. Factual findings from the proceedings below receive the benefit of prima facie correctness. Also, if the ALJ heard live testimony and made credibility determinations, such determinations are given special weight and a district court may disturb them only after finding that non-testimonial extrinsic evidence justifies a contrary conclusion. Id. at 21-22. Credibility determinations by an ALJ can include implicit decisions indicated in the record by acceptance of evidence in the ALJ's opinion. Id. at 28 n.7. A district court is not permitted to impose its own theories regarding educational methods upon the states. Id. at 21.

### 1. Dumont's Requests to Correct or Expand the Factual Record

Dumont makes numerous requests throughout its briefing for this Court to correct or expand the factual record. Some of these issues are not material to the issues before this Court and do not merit discussion: for example, whether J.T. received a B.A. or a Ph. D. in political science raises no material issue of fact with respect to any disputed matter in Judge Robinson's opinion. (Def. Br. at 9.) Where this Court has found individual concerns raised by Dumont to have significance with respect to an individual legal question, it will address them as pertinent to the issue under consideration infra.

Dumont does, however, raise one issue that has potential global impact on the record before this Court. Dumont asserts that Judge Robinson denied admission into evidence twelve of

Dumont's exhibits without any written or oral reasoning stated for her ruling. (Pl. Br. at 23.) Dumont then refers this Court to part of its post-trial brief in which the arguments for admitting the twelve documents rest. (Id.) This Court agrees that a proper review of an ALJ's evidentiary decisions requires some record of the reasoning underpinning the decisions, and that without some kind of explanation as to why some exhibits were excluded, review of the administrative decision is made more difficult. That being said, the excluded exhibits <u>must</u> be germane to this Court's analysis in light of th AL J opinion. Dumont, however, does not indicate in its brief why an examination of this Court of the excluded exhibits is necessary in order to properly review the ALJ opinion; Dumont only points to its arguments for admissibility contained in a lengthy brief prepared for a different tribunal. Without an articulated basis as to why these exhibits require review by this Court in light of the ALJ opinion, this Court finds that Dumont has waived this issue. <u>See</u> <u>United States v. Pelullo</u>, 399 F.3d 197, 201 n.2 (3d Cir. 2005) (finding that an argument raised in the notice of appeal but not elaborated on in the appellate brief is deemed waived).

### 2. Dumont's Promise to Provide DIR/Floortime Instruction

Dumont contends that it was not required to provide DIR/Floortime instruction to I.T. because it had not promised to do so. (Def. Br. at 29.) In support of this contention, Plaintiff argues that it never promised to provide a program to I.T. using the DIR/Floortime methodology, stating that Judge Robinson's conclusion does not indicate who promised the change in methodology and that Dumont approved no such change. (Id.) Judge Robinson found that at the March 25, 2008 meeting where Dumont proposed the IEP, the participants "agreed that I.T should be placed at Tri-Valley and that the program should include various sensory experiences

and Floortime." (ALJ Op. at 78.) She also found that due to the decision of Dr. Dowd, Floortime was never actually considered by Dumont for inclusion in the IEP. (Id. at 86.) While the "Conclusion" section of the opinion could be interpreted to say that Dumont "promised" to use Floortime in I.T.'s IEP, Floortime is only one of the items referred to: the ALJ opinion says that Dumont "prepared an IEP that did not include the modifications recommended, discussed, and promised for I.T. including DIR/Floortime and the sensory diet and behavior plan." (Id. at 89.) This Court finds that each of the items in the second list do not need to have been promised in order for Judge Robinson's conclusion to parse properly; Dumont need only to have received a recommendation or discussed it in order for it to serve as part of the basis for that sentence in the administrative decision's conclusion, as the word "including" indicates that there may not be full congruency between the first and second lists in the sentence. Furthermore, even if Dumont was correct, the ALJ opinion's conclusion would still not have been disturbed as to the sensory diet or the behavior plan requirement that Judge Robinson found. This Court, therefore, denies Dumont's motion on the basis that it did not promise to implement Floortime for I.T.

### 3. Whether the Record Contains a Recommendation for DIR/Floortime Instruction for I.T.

Dumont claims that neither Defendants' experts nor Plaintiff's experts could have recommended DIR/Floortime at the proper time to evaluate the IEP, because none were involved with I.T. prior to March 2008, when Ms. Stenerson prepared the IEP for Dumont. (Pl. Br. at 30.) This Court finds that Dumont's contentions about the involvement of Ms. Catalano and Dr. Havens, Defendants' experts, with I.T. prior to the development of the Dumont IEP are well-founded. Ms. Catalano assisted in preparing the Learning Plan for I.T. at The Children's Center,

and the record does not disclose earlier involvment with I.T. (ALJ Op. at 38.) Similarly, the record does not indicate that Dr. Havens observed I.T. prior to the March 25, 2008 meeting.

The ALJ opinion, however, relies upon Ms. Stenerson's testimony regarding her preparation for the March 25, 2008 IEP meeting: "Ms. Stenerson said that prior to the March 25 IEP meeting the parents shared their notes on Dr. Baumgaertel's findings, inclusive of discussions [sic] notes on the need to include Floortime in an IEP and descriptions of Floortime activities that families may use with their children at home." (Id. at 29; Tr. of May 29, 2008, at 73:6-10.) Ms. Stenerson's testimony indicates that she was apprised of Dr. Baumgaertel's Floortime recommendation at the latest on March 25, 2008, during the meeting. (Tr. of May 29, 2008, at 73:6-10.) A court must examine the sufficiency of an IEP at the time the document is generated. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 761 (3d Cir. 1995). At the time of the March 25, 2008 meeting, Dumont was aware that Floortime had been used with I.T., and that J.T. and Dr. Baumgaertel believed its use should continue. This Court finds, therefore, that evidence in the record—provided by Dumont's own witness—supports Judge Robinson's finding that Floortime would have been a necessary component of an IEP for I.T., and denies Dumont's motion for summary judgment on that basis.

  **4.  Whether the Dumont IEP Provided a Sensory Diet or Behavior Modification Plan**

Dumont asserts that its IEP did contain both sensory diet and behavior modification components. (Pl. Br. at 30.) The IEP's behavior modification component states that the ABA methodology would be used, but "[i]f there is a need to develop a more formalized behavioral

intervention plan, this will occur after initial adjustment and assessment of the functions of behaviors by program staff and with parental notification and consent." (Pl. Ex. R-4 (unpaginated).) The IEP's sensory diet reads as follows: "[u]se sensory activities, tickles, hugging, deep pressure, physical touch." (Id.)

Dumont argues that other representations by its witnesses should have obviated any shortcoming in the IEP with respect to behavior modification. First, it argues that several of its witnesses noted that an initial IEP is often temporary, and the IEP is reevaluated after 30 days. (Pl. Br. at 14.) Second, it argues that a behavioral plan would not be put into place for a three-year old child first entering school without an evaluation period. (Id. at 30.)

This Court finds that the Dumont IEP did not provide a behavior modification plan as found necessary by Judge Robinson. The IEP indicated that one would be developed if the need arose, and Dumont's witnesses indicated that they might have imposed one after 30 days, but neither of these qualified statements of a behavior modification plan's <u>availability</u> satisfied the need identified by the ALJ with respect to I.T.'s education. The testimony by Defendants' expert, Dr. Havens, is not to the contrary (as Dumont maintains). On re-cross, Dr. Havens testified that in her school, new students have the educational goals in their Learning Programs reevaluated at some point after starting, not that behavior modification programs are never instituted from the outset with autistic children. (Tr. of Feb. 6, 2009 at 144-45.)

With respect to the sensory diet or sensory program, Dumont asserts that any deficiency in the IEP was obviated by testimony at trial that Tri-Valley would provide an adequate sensory program for I.T.'s needs. (Def. Br. at 17.) Under the IDEA, however, "in determining whether

an IEP was appropriate, the focus should be on the IEP actually offered and not on one that the school board could have provided if it had been so inclined." Lascari v. Board of Educ., 560 A.2d 1180, 1189 (N.J. 1989). See also D.C. v. Montgomery Twp. Bd. of Educ., No. 04-2851, 2005 WL 1229827, at *2 (D.N.J. 2005) (quoting Lascari). Whether or not Dumont would have offered I.T. additional sensory education services at a later date, the substance of the IEP with regard to her sensory education was limited to "sensory activities, tickles, hugging, deep pressure, physical touch," without any indication the numerous sensory stimulation techniques used at Tri-Valley and discussed in Dumont's brief, or any detailed program or reference to I.T.'s home sensory diet. (Pl. Ex. R-4.) This Court finds that the ALJ's finding of fact with respect to the absence of an adequate sensory program for I.T. in the IEP was well-founded. This Court, therefore, denies summary judgment to Dumont on the basis that the Dumont IEP supplied I.T. with the necessary sensory program or behavioral program.

### 5. Whether the Dumont IEP Provided I.T. With a Free and Appropriate Public Education

Defendants move for partial summary judgment on the ground that Dumont violated their procedural rights under the IDEA and deprived I.T. of her right to a free and appropriate public education. (Pl. Opp. Br. at 5.) Defendants argue that school districts must consider information supplied by parents in developing an IEP, and the alleged barring of Christine Ruane ("Ruane") from the March 7, 2008 meeting violated this principle. (Id. at 7.) They also maintain that the way in which the IEP meeting was held, with the general education teacher present for only three minutes and the IEP predrafted and presented to J.T. for her signature, also violated I.T.'s procedural rights under the IDEA. (Id.) Dumont avers that the IEP proffered at the March 25,

2008 meeting satisfied I.T.'s right to a free and appropriate public education. (Def. Br. at 27.)

The test for whether an IEP provides a free and appropriate public education involves two steps. "[A] reviewing court must (1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'" D.S., No. 08-4730, slip op. at 23 (quoting Mary T. v. School Dist. of Phila., 575 F.3d 235, 249 (3d Cir. 2009)).

The parties appear to disagree as to the material fact of whether or not Ruane was present at the March 7, 2008 meeting. Dumont alleges, based on the testimony of Ms. Lloyd, that Ruane was present at the meeting and spoke to Lloyd about the early intervention services provided to I.T. Dumont is correct that Lloyd testified that Ruane came to the intake meeting and spoke to the classroom teacher about I.T. (Tr. of July 1, 2008 at 19-20.) Lloyd's testimony is not, however, inconsistent with Defendants' and Judge Robinson's version of events. Lloyd indicated that she usually met with parents, and implied that the meeting between Ruane and the classroom teacher was separate from her meeting with the parents. (Id.) That is the version of events laid out by Judge Robinson, where Ruane did not speak in the meeting held with J.T. (Pl. 56.1 Statement ¶¶ 78-79.) This Court finds no material difference between the two parties' positions on Ruane's contribution: Ruane was not permitted into the inner sanctum of the meeting with J.T., Stenerson, and Lloyd, though Ruane did provide input at the intake meeting by having discussions with the Tri-Valley classroom teacher.

This Court need not rule on whether Ruane's level of input denied I.T. a free and appropriate public education, however, because the IEP prepared and submitted for J.T.'s

signature at the March 25 meeting demonstrated sufficient procedural and substantive defects for this Court to find that it violated the IDEA. The Third Circuit Court of Appeals has stated, with respect to the IDEA, that "[t]his system of procedural protection only works if the state devises an <u>individualized</u> program and is willing to address the handicapped child's 'unique needs.'" Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 177 (3d Cir. 1988) (emphasis in original). Here, prior to the end of the final IEP meeting, Dumont had information at its disposal that DIR/Floortime had been effective during I.T.'s early intervention education. This information was available to Dumont both from J.T. and from Dr. Baumgaertel. (Pl. 56.1 Statement ¶¶ 93, 98.) As discussed supra, Dumont also had information that I.T. required a behavioral program and a sensory program or diet. Dr. Dowd had decided that Tri-Valley would be the only placement option for I.T. (Id. ¶ 73.) The IEP presented to J.T. did not allow for continuation of DIR/Floortime instruction at Tri-Valley. (Id. ¶ 100.) This Court need not wade into a discussion of the relative merits of the ABA or DIR methodologies for educating autistic children in order to find that sufficient evidence existed in the record for Judge Robinson to make the factual determination that Dumont's IEP was inappropriate, based on Dowd's decision not to consider other placements or the use of Floortime, the IEP's failure to allow for a modification of the methodolgy used at Tri-Valley, the need for a behavior modification program in the IEP, I.T.'s sensory education needs, and I.T.'s individualized needs that had been met with DIR/Floortime during her early intervention instruction. D.S., No. 08-4730, slip op. at 23; Polk, 853 F.2d at 177. Plaintiff argues that taking into account the administrative findings in the record below that DIR/Floortime had provided an educational benefit to I.T. is tantamount to permitting parents their choice of educational methodology. (Pl. Br. at 33.) Here, although the

issue of methodology is one that is present, the particular issue this Court rules upon is not whether ABA or DIR would be better for I.T., but whether or not the record supports the ALJ's finding that the IEP prepared for I.T. did not serve her unique needs, including the fact that she benefitted from the DIR/Floortime methodology. This Court finds, therefore, that the record discloses that such evidence existed in the form of the testimony from J.T. and Dr. Havens, who "repeatedly testified that no program for I.T. could be appropriate unless it included" DIR/Floortime. (Def. Br. at 32.) This Court finds that Judge Robinson's findings of fact, considered to be prima facie correct, are supported by the record below. D.S., No. 08-4730, slip op. at 27. Furthermore, there is evidence that Dumont applied blanket rules prior to the March 25 meeting 1) against the use of DIR/Floortime and 2) requiring placements at Tri-Valley, procedurally impairing I.T.'s right to a free and appropriate education. Polk, 853 F.2d at 177. This Court, therefore, denies summary judgment to Dumont on the issue of whether it provided a free and appropriate public education to I.T., and grants summary judgment to Defendants on the issue of whether or not Dumont's IEP denied I.T. a free and appropriate public education.

### 6. Whether The Children's Center is an Appropriate Placement

Dumont argues that Judge Robinson's finding that I.T. has received a meaningful educational benefit constituting a free and appropriate public education at The Children's Center is unsupported by the record evidence. (Def. Br. at 31; Def. Reply Br. at 38-39.) Dumont claims that the record evidence demonstrates 1) that I.T. regressed while at The Children's Center, and 2) that the absence of objective evaluations compels a finding that no meaningful educational benefit for I.T. can accrue at The Children's Center. (Def. Reply Br. at 38-39.) Defendants argue that the record below demonstrates that The Children's Center "appropriately meets I.T.'s

needs and educates her in the least restrictive environment." (Pl. Opp. Br. at 32.)

"A parent's decision to unilaterally place a child in a private placement is proper if the placement 'is appropriate, i.e., it provides significant learning and confers meaningful benefit . . . .'" Mary T., 575 F.3d at 242 (quoting Lauren W. v. DeFlaminis, 480 F.3d 259, 276 (3d Cir. 2007)). A private placement need not necessarily provide an IEP or meet state educational standards in order to be appropriate. Id.

The Children's Center does not base its curriculum solely on DIR/Floortime, but incorporates the methodology into its instruction and employs a certified DIR/Floortime expert, Corinne Catalano ("Catalano"). (ALJ Op. at 77; Pl. 56.1 Statement ¶ 155.) It is licensed by the State of New Jersey and approved by the New Jersey Department of Education. (Pl. 56.1 Statement ¶ 152.) Judge Robinson found that I.T. made significant progress during her time at The Children's Center, both in terms of The Children's Center's own scoring and testimony concerning I.T.'s ability to interact in the class, regulate her own behavior, and use language. (ALJ Op. at 86-87.)

This Court finds that the record does not justify a departure from the findings of Judge Robinson. First, Judge Robinson made implied findings of credibility as to the testimony she used in rendering her findings of fact. D.S., No. 08-4730, slip op. at 28 n.7. The testimony credited was that of Defendants' witnesses. Both J.T. and Dr. Havens testified to I.T.'s progress in using more complex language, engaging in more group activities, and regulating her behavior after matriculating to The Children's Center. (Tr. of July 15, 2008 at 254:8-16; Tr. of Nov. 21, 2008 at 15:8 to 18:25; Tr. of February 6, 2009, at 89:17-23.) This testimony, credited below by

supplying the basis for some of Judge Robinson's factual findings and given "due weight" on review by this Court, supports a finding that I.T. has made meaningful progress at The Children's Center. D.S., No. 08-4730, slip op. at 32.

Dumont asserts, without support in authority, that the measurement of I.T.'s progress at The Children's Center was insufficiently precise to demonstrate progress. (Def. Br. at 15-16.) Specifically, Dumont seeks to have this Court find that the imprecise terms used in support of the findings that I.T. regulated her behavior or used language, words such as "more" and "less," should be supported by numerical data so that the specific increase or decrease in behavior can be more accurately described. (Pl. Br. at 15.) This Court acknowledges that there is caselaw that supports the proposition that an IEP must set "measurable annual goals," yet does not mean, however, that an appropriate placement must meet any such stringent requirement. See, e.g., M.A. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 339 (3d Cir. 2003) (listing IEP requirements). In fact, the Supreme Court has found that an appropriate placement school need not be state certified, only that it provide a sufficient education under the IDEA. Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 14 (1993) ("Nor do we believe that reimbursement is necessarily barred by a private school's failure to meet state education standards."). Furthermore, caselaw indicates that an ALJ has flexibility in how to determine whether a child is receiving a measurable educational benefit. The Third Circuit Court of Appeals recently stated that "we consistently have declined to adopt bright line rules to determine whether a student is receiving a meaningful educational benefit under the IDEA." D.S., No. 08-4730, slip op. at 30. In so stating, the Court of Appeals found that special education classroom scores should not be conclusive in determining whether or not a meaningful educational benefit was conferred. Id. at

31. The Ninth Circuit Court of Appeals has also found that the facts of an individual case must be taken into account when determining how to measure educational progress. R.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 943 n.9 (9th Cir. 2007) ("The SEHO's reliance on achievement test scores rather than grades to measure R.B.'s academic progress was a reasonable choice because of the very different grading systems used by Donaldson Way and Intermountain."). This Court recognizes that the record below relates to a child three years old at the time the testimony was taken and that standardized test scores and high school grades are not available for I.T. Judge Robinson nevertheless made a factual finding based upon the information presented: classroom visits by expert witnesses of the parties. That record supports her finding that The Children's Center was an appropriate placement for I.T. Therefore, this Court denies summary judgment to Dumont and grants summary judgment to Defendants on this issue. (ALJ Op. at 89.)

**CONCLUSION**

For the foregoing reasons and as set forth in the accompanying order, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted. An appropriate order accompanies this Opinion.

DATED: May 10, 2010                    /s/ Jose L. Linares
                                       United States District Judge